

FILED

MAR -9 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| In re | ) | Case No.  09-10452-B-7 |
|---|---|---|
| Leann Kristine Freeman, | ) | DC No. CWC-3 |
| Debtor. | ) | |

**MEMORANDUM DECISION REGARDING ATTORNEY'S
FINAL APPLICATION FOR COMPENSATION**

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of res judicata and claim preclusion.

Carl W. Collins, Esq., appeared on behalf of himself as the applicant.

James E. Salven appeared in his capacity as the chapter 7 trustee.

Before the court is the final application for compensation (the "Application") filed by Carl W. Collins, Esq. ("Collins"), for services rendered as attorney for the chapter 7 trustee, James E. Salven (the "Trustee"). The Application was filed before the Trustee's final report. For the reasons set forth below, the Application will be granted in part and denied in part.

59

1        This memorandum decision contains the court's findings of fact and conclusions

2    of law required by Federal Rule of Civil Procedure 52(a), made applicable to this

3    contested matter by Federal Rule of Bankruptcy Procedure 7052.  The court has

4    jurisdiction over this matter under 28 U.S.C. § 1334 and 11 U.S.C. § 330[1] and General

5    Orders 182 and 330 of the U.S. District Court for the Eastern District of California.  This

6    is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

7    **Background and Findings of Fact.**

8        Leane Kristine Freeman (the "Debtor") filed a chapter 7 petition on January 22,

9    2009.  The Debtor's statement of financial affairs disclosed a real estate transaction in

10   2007 involving the Debtor's parents, Brent and Nancy Freeman (the "Parents") and the

11   sale to third parties of a rental property located on Hogan Avenue in Fresno, California

12   (the "Hogan Sale").  The Debtor had owned a partial interest in the Hogan property, but

13   the Parents received all of the proceeds.  There were no nonexempt assets in the

14   Schedules and the case was originally noticed to creditors as a "no-asset" case.  The

15   Debtor's discharge was entered without objection in April 2009.  As a "no-asset" case,

16   the Trustee would have filed his final report and the case would have closed shortly

17   thereafter.  Had the Trustee closed the case as a no-asset case, he would have received a

18   fee of $60.

19       The Section 341 meeting of creditors was concluded on March 12, 2009 (the

20   "§ 341 Meeting").  The Trustee apparently questioned the Debtor regarding the Hogan

21   Sale and concluded, based on that examination, that the transfer could be avoided as a

22   fraudulent transfer.  There is no evidence to show that the Trustee conducted any further

23   examination or requested any documents from the parties to the Hogan Sale.  Instead, the

24

25       [1]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy

26   Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-

27   9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy

    Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat.

28   23.

1  Trustee elected to employ counsel to investigate that issue.

2          On March 17, 2009, the Trustee filed his "Report of 341 Meeting" informing the

3  court that there were non-exempt assets in the estate (the "Asset Notice").  The court

4  infers that the Asset Notice was a result of the Trustee's conclusion that he could either

5  avoid the Hogan Sale or recover the sale proceeds from the Parents to pay creditors.  The

6  clerk issued a Notice to File Proof of Claim Due to Possible Recovery of Assets to all

7  scheduled creditors on March 17, 2009.  Nine unsecured claims were filed in the

8  approximate amount of $48,188, including a priority tax claim filed by The Internal

9  Revenue Service in the amount of $3,404.11.

10  **The Employment of Counsel.**

11          On October 20, 2009, seven months after conclusion of the § 341 meeting, this

12  court authorized the Trustee to employ Robert Hawkins, Esq. ("Hawkins") to serve as his

13  general counsel and to "investigate a fraudulent conveyance of real property."[2]  The

14  record does not reflect that Hawkins conducted any analysis of the Hogan Sale or

15  performed any services in connection with this case.  Six months later, on April 20, 2010,

16  this court authorized the Trustee to employ Beth Maxwell Stratton, Esq. ("Stratton") to

17  replace Hawkins.  Like Hawkins, the record does not show that Stratton conducted any

18  analysis of the Hogan Sale or performed any services in connection with this case.

19  Stratton subsequently closed her law practice and moved away from the area.[3]

20          Seven months later, on November 23, 2010, this court authorized the Trustee to

21  employ Collins to replace Stratton as his general counsel and to, presumably, investigate

22  the Hogan Sale.  Collins' billing records show that he "reviewed the Debtor's bankruptcy

23  file" and began drafting the Adversary Proceeding on December 27, 2010.  However,

24  Collins did not actually examine the Debtor, the Debtor's Parents, or the parties who

25

26          [2]See Trustee's Application for Appointment of Counsel ¶ 2 dated October 16, 2009.

27          [3]Neither Hawkins nor Stratton have filed any billing records, or made a request for
28  compensation in this case.

3

purchased the Hogan property.  Nevertheless, the Trustee concluded, presumably based on Collins' evaluation and advice, that there was enough evidence to warrant the commencement of an adversary proceeding against the Parents to avoid the Hogan Sale as a fraudulent transfer.

**The Adversary Proceeding.** Collins filed that adversary proceeding against the Parents on January 5, 2011, seventeen days before the two-year bar date in § 546(a)(1)(A) (adversary no. 11-1003, the "Adversary Proceeding").  The Trustee alleged in the Adversary Proceeding that the Hogan Sale generated net proceeds worth approximately $99,798 (the "Hogan Proceeds").  The Trustee also alleged, *inter alia*, that the Debtor transferred the Hogan Proceeds to her Parents with actual intent to defraud creditors, and/or that the Debtor had transferred the Hogan Proceeds for less than their "reasonably equivalent value" (§ 548(a)(1)(B)), and that the Trustee was entitled to avoid the transfer and recover the Hogan Proceeds for the estate.[4]  The Parents retained counsel and filed an answer, denying the pertinent allegations and raising critical affirmative defenses. Specifically, the Parents alleged that (1) the Debtor had conveyed to them a one-half interest in the Hogan property in 2006, and (2) the Debtor's share of the Hogan Proceeds was given to her Parents to repay an antecedent debt for loans made by the Parents, thus making the transfer a potential preference, not a fraudulent conveyance.

The initial status conference was held on March 8, 2011.  By then, it was apparent to Collins, based on the Parent's affirmative defenses, that the complaint needed to be amended.  On April 12, 2011, the Trustee filed an amended complaint which included a new claim for relief; the Trustee sought to avoid the 2006 transfer of title referenced in the Parents' affirmative defenses, in addition to recovering the Hogan Proceeds.  The Parents moved to dismiss the new claim for relief on the grounds that it was time-barred and did not relate back to the claims originally pled relating to transfer of the Hogan

---

[4]The Trustee did not name the purchaser of the Hogan Property or plead a claim to avoid the Hogan Sale itself.

4

1  Proceeds.  That motion was granted on June 16, 2011.

2  **The Settlement.**

3        After the court dismissed the Trustee's new claim for relief, the Trustee filed an

4  appeal on June 29, 2011.  However, prior to the next status conference, on July 18, 2011,

5  the Trustee filed a status conference statement reporting that the Adversary Proceeding

6  had been settled.  On August 30, 2011, the Trustee filed a motion to approve the

7  Settlement.  The parties agreed to settle the Adversary Proceeding for a cash payment of

8  $7,500, the appeal was withdrawn, and the Adversary Proceeding was ultimately

9  dismissed (the "Settlement").

10        In support of the Settlement, the Trustee declared that the Settlement was in the

11  best interest of the creditors and bankruptcy estate, and that "[t]he expense of litigating

12  the [Adversary Proceeding] would erode the amount ultimately available to distribute to

13  creditors and delay distribution."[5]  The motion clearly inferred that there would be some

14  benefit to creditors, but it did not disclose the amount of attorney's fees that had already

15  accrued to prosecute the Adversary Proceeding.  The Settlement was approved without an

16  objection.

17  **Collins' Fee Application.**

18        The Trustee has not yet filed his Final Report and Proposed Distribution.

19  However, at the hearing on this matter, the Trustee acknowledged that the only assets in

20  the estate are the proceeds of the Settlement ($7,500), all other assets being exempt.

21  Salven's statutory compensation for distributing the Settlement will be $1,500.  § 326(a).

22  In this Application, Collins requests compensation for legal fees in the amount of $15,574

23  (58.7 hours of attorney and paralegal time), and reimbursement of expenses in the amount

24  of $549.44.  Collins' billing rate is $295 per hour.  He bills for his paralegal at $90 per

25  hour and for travel time at the rate of $147.50 per hour.  Even with the Settlement, the

26

27        [5]Declaration of Trustee in Support of Motion to Approve Settlement of Controversy,

28  ¶14(d ) filed August 30, 2011.

estate is administratively insolvent. After the payment of Salven's compensation and Collins' fees, the Trustee will have nothing to pay to the unsecured creditors.

**Issue.**

In a nutshell, the problem here is that this case was originally filed as a no-asset case; after a minimal investigation the Trustee declared it to be an asset case, inducing a few creditors to file proofs of claim, and then he employed counsel to prosecute the Adversary Proceeding resulting in a settlement that does not cover the Trustee's commission and the attorney's fees. After more than three years of administrative work, the Trustee now proposes to close the case, essentially as a no-asset case. The issues before the court are (1) whether the Trustee's prosecution of the Adversary Proceeding was a reasonable exercise of his duties under § 704, and (2) whether Collins' legal fees are compensable under § 330.

**Applicable Law.**

A chapter 7 trustee's duties pertinent to this analysis are prescribed in § 704(1) & (4). The trustee *shall* investigate the debtor's financial affairs, collect the property of the estate, reduce it to money, distribute the money to the creditors, and close the estate "as *expeditiously* as is compatible with the best interests of parties in interest." (emphasis added.) "[A] chapter 7 trustee voluntarily assumes a statutory duty under § 704(1) to collect and reduce the property of the estate for which trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." *In re C. Keffas & Son Florist, Inc.*, 240 B.R. 466 (Bankr. E.D.N.Y. 1999).

There is an undeniable tension between a trustee's duty to both administer the estate expeditiously, and to maximize recovery from the liquidation of assets. "In short, it is the trustee's duty to both the debtor and the creditors to realize from the estate all that is possible for distribution among the creditors." 6 *Collier on Bankruptcy*, (15th Ed. Revised), ¶ 704.02[3] at 704-12. Conversely, the trustee's duty to expeditiously close the estate has been described by courts as the trustee's "main" duty under § 704. *In re Riverside-Linden Inv. Co.*, 85 B.R. 107, 111 (Bankr. S.D. Cal. 1988), *aff'd.*, 99 B.R. 439

(9th Cir. BAP 1989), *aff'd.*, 925 F.2d 320 (9th Cir. 1991) (citation omitted).

Obviously, in an asset case, the trustee needs a reasonable period of time to investigate the debtor's financial affairs and to gather and liquidate the assets. However, any benefit derived from delay is not without an offsetting cost, *i.e.*, the inevitable injury suffered both by the creditors, as lost opportunity costs, and by the debtors, in delaying their "fresh start." In the administration of a chapter 7 case, the trustee must employ a reasonable approach which balances those costs against the potential benefits.

When the chapter 7 trustee employs an attorney to work for the bankruptcy estate, the standard for compensation of that attorney is defined in § 330(a). Section 330(a)(1)(A) authorizes the court to award "reasonable compensation for actual, necessary services rendered" by the attorney. Section 330(a)(1)(B) authorizes "reimbursement for actual, necessary expenses." Section 330(a)(2) authorizes the court to "award compensation that is less than the amount of compensation that is requested." The court must find that the compensation is reasonable. Section 330 (a)(3) requires the court to consider "the nature, the extent, and the value of such services, taking into account all relevant factors." Those "relevant factors" include the time spent, the rates charged, and whether the services "were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of" the bankruptcy case.

Even if the court finds that the services billed by an attorney are "actual," meaning that the fee application reflects time entries properly charged as legal services, the attorney must still demonstrate that the work performed was necessary and reasonable. *Unsecured Creditors' Committee v. Puget Sound Plywood, Inc. (In re Puget Sound Plywood)*, 924 F.2d 955, 958 (9th Cir. 1991). An attorney employed under § 327 must exercise good billing judgment with regard to the legal services undertaken. *Id.* at 959. The court's authorization to employ an attorney to work in a bankruptcy case does not give that attorney "free reign [sic] to run up a [legal fee] tab without considering the maximum probable [as opposed to possible] recovery." *Id.* at 958. Prior to working on a

7

legal matter, the attorney is obligated to consider:

> (a) Is the burden of the probable cost of legal services disproportionately large in relation to the size of the estate and maximum probable recovery?
>
> (b) To what extent will the estate suffer if the services are not rendered?
>
> (c) To what extent may the estate benefit if the services are rendered and what is the likelihood of the disputed issues being resolved successfully?

*Id.* at 959.

An attorney employed under § 327 is not held to guarantee the result of those legal services. However, the attorney must demonstrate that the legal services billed to the bankruptcy estate were "reasonably likely to benefit the estate when the services were rendered." §§ 330(a)(3)(A) and (a)(4)(A)(ii)(I); *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Company (In re Mednet)*, 251 B.R. 103, 108 (9th Cir. 2000). "A bankruptcy court also must examine the circumstances and the manner in which services were performed and the results achieved in order to arrive at a determination of a reasonable fee allowance." *Id.* When a cost benefit analysis indicates that the trustee and his professionals are the only parties likely to benefit from the professional services, then "the service is unwarranted and a court does not abuse its discretion in denying fees for those services." *Id.* at 109.

A chapter 7 trustee's attorney is responsible for his/her role in prosecuting unsuccessful litigation. Even if the trustee made the decision to pursue the litigation in the first place, the attorney at least acquiesced in the decision. *Leichty v. Neary (In re Strand)*, 375 F.3d 854, 859 (9th Cir. 2004). "If the trustee insists on pursuing litigation which is not cost-effective, then the attorney should seek to withdraw or, at least, recommend that the trustee obtain a second opinion." *Id.* citing *Digesti & Peck v. Kitchen Factors, Inc. ( In re Kitchen Factors, Inc.)*, 143 B.R. 560, 563 (9th Cir. 1992) (other citation omitted). The bankruptcy court has the discretion to reduce the fees requested by the trustee's counsel after unsuccessful litigation in which the potential merits and benefits of the litigation were miscalculated. *In re Strand*, 375 F.3d at 861.

/ / /

8

**Analysis and Conclusions of Law.**

Neither the Trustee, nor the UST has questioned the fact that nobody will receive anything from all the work that was done in this case except the Trustee and Collins. However, the bankruptcy court has an independent duty to review the reasonableness of a professional's fees, even when the trustee who employed that professional does not object. *In re Montgomery Drilling Co.*, 121 B.R. 32, 35-36 (Bankr. E.D. Cal. 1990).

When the facts to support a potential adversary proceeding are discovered by a trustee, the trustee should be prepared to conduct an initial investigation of the facts, utilizing the powers to examine and obtain documents under Rule 2004, if necessary, and make an informed decision whether the facts warrant the employment of a professional to pursue a further investigation. If an attorney is employed to advise and represent the trustee in that effort, that team must prudently expand their investigation of the facts to make sure that the potential claim is sufficiently meritorious to justify the administrative expense and the delay which will result from prosecution of the adversary proceeding. Fed.R.Bankr.P. 9011(b) mandates that that investigation should be done *before* the adversary proceeding is filed.[6]

Even if the trustee's investigation shows that the potential claim has merit, the trustee must be sure that prosecution of the adversary proceeding is reasonably likely to benefit the bankruptcy estate, meaning the creditors will receive some distribution on their claims worthy of the delay and expenses incurred to administer the estate. Congress

_____

[6]Rule 9011(b) states in pertinent part:
Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –
    (1) it is not being presented for any improper purpose;
    . . .
    (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;

9

did not intend that chapter 7 trustees should pursue "nominal" cases, *i.e.*, cases in which the administrative expenses would consume all or virtually all of the nonexempt assets, leaving little or nothing for the unsecured creditors. See 8 *Collier on Bankruptcy*, (16th Ed.), ¶ 1325.05[2][d] at 1325-21, 1325-22, citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 94-95 (1977) (making clear Congress's disfavor of trustees' administration of nominal asset chapter 7 cases, in which the only beneficiaries are those who administer estate).

Here, the Trustee and Collins took a no-asset case and filed the Adversary Proceeding with a minimal investigation of the facts. The Trustee waited almost two years before retaining an attorney who would actually pursue the claim, and the Adversary Proceeding itself was not filed until 17 days before the bar date. The record suggests that neither the Trustee nor Collins seriously investigated the facts behind the Hogan Sale until after the Parents responded to the Adversary Proceeding and pled their affirmative defenses. It was only then that the Trustee learned that the Parents had meritorious defenses to the fraudulent conveyance claims and that the complaint sought to avoid the wrong transfer. By that time, the new claim which the Trustee needed to pursue in an amended complaint was time-barred. The Trustee's efforts then shifted to prosecution of an appeal to support the negotiation of a Settlement which generated less than half of the amount needed to cover the resulting administrative expenses. In the end, as a result of delay and inadequate investigation of the potential claim, the Trustee's efforts generated nothing for the creditors of the bankruptcy estate after payment of the administrative costs and delayed closure of the case for three years.

Collins' employment was authorized on November 23, 2010. Collins' time records show that the first time entry devoted to reviewing the file and drafting the complaint was over a month later, December 27, 2010. By that time, the bar date for filing a complaint was only 26 days away. Collins never conducted an examination of the Debtor, or her Parents, or requested the production of any records relating to the Hogan property and the Hogan Sale before filing the complaint. Had Collins requested a 2004

10

examination immediately after his employment and requested the production of documents, he would have learned, presumably that the Parents had defenses to the fraudulent conveyance claim. The work which Collins did in preparing and prosecuting this Adversary Proceeding, without any investigation regarding the merits of the fraudulent conveyance claim, had little to no chance of being either necessary or beneficial to the estate. Since the Adversary Proceeding did produce a modest return of $7,500 after the Settlement, the court is persuaded that the appropriate compensation for Collins' work is 50% of the results obtained.

**The "Catch-22."**

The court is fully aware of the "Catch-22" here. Had there been no Adversary Proceeding, there would be no Settlement and no funds to pay Collins for the work he did in the case, even the work that was reasonable and compensable. However, a bankruptcy trustee should never prosecute an adversary proceeding, or an appeal of an adverse ruling, solely to extract a settlement from the defendant(s). This was first and always a no-asset case. Once the Trustee learned about the Hogan Sale, he should have done more to investigate the facts before employing an attorney. Once the Trustee approached Collins about representing the estate, Collins could have reviewed the available evidence and/or insisted on more investigation before he agreed to that employment. Unfortunately, nonpayment for unsuccessful litigation is one of the risks inherent in the representation of trustees in bankruptcy cases.

The solution to that problem lies in Rule 9011. The trustees and their professionals have a duty to reasonably investigate a potential claim for relief *before* filing the adversary proceeding. First, the trustee should be trained and equipped to do enough discovery - utilizing if necessary the § 341 meeting, Rule 2004 examinations, and the production of documents - to determine whether the employment of an attorney is warranted. The attorney should not accept that employment without carefully reviewing the case. Once employed, the attorney accepts some risk of success. The professional's risk is minimized by an early and efficient investigation of the facts, not by demanding a

11

1 │ "parachute" settlement to bail out of faltering litigation after it is filed.

2 │ **<u>Conclusion.</u>**

3 │       Based on the foregoing, the court finds and concludes that pursuit of the Adversary

4 │ Proceeding at the last minute, and without a reasonable investigation of the facts, was not

5 │ a reasonable exercise of the Trustee's duties under § 704.  The Trustee should have

6 │ conducted a more comprehensive investigation of the Hogan Sale before he employed

7 │ Collins.  Once employed, in November 2010, Collins still had sufficient time to conduct a

8 │ reasonable investigation of the Hogan Sale, request the production of documents, and

9 │ determine what claims for relief needed to be pled before the bar date.  A reasonable fee

10 │ for the services rendered in this case is $3,750 measured by 50% of the results obtained.

11 │       Dated: March _____ 9 _____ , 2012

12 │

13 │

                                 W. Richard Lee
                                 United States Bankruptcy Judge